IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

AMANDA "MANDY" THORN-FREEMAN,

    Plaintiff,

vs.                                                    No. 20-CV-448-JAP-GJE

JOSE R. VALDEZ, in his individual capacity,
ROBERTA LUCERO-ORTEGA, in her individual capacity,
and NEW MEXICO DEPARTMENT OF CORRECTIONS,

    Defendants.

## REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS COMPLAINT BASED IN PART ON QUALIFIED IMMUNITY

**I.   CLAIM AGAINST LUCERO-ORTEGA IN HER INDIVIDUAL CAPACITY UNDER 42 U.S.C. § 1983 (COUNT II)**

    Plaintiff in her response cites to Ashcroft v. Iqbal (see Response [Doc. 11] at 2) but ignores its pertinent substance: that a supervisor may be held liable only for her own personal, individual acts (and not for unconstitutional conduct by her subordinates) and that the supervisors's requisite state of mind (here, deliberate indifference and a subjective consciousness of the risk of constitutional injury) must be plausibly supported by "factual allegations" set forth in the complaint, not just a conclusory statement regarding state of mind. A pleading containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" is insufficient to meet the plausibility standard, nor does a complaint "suffice" if it merely makes "naked assertion[s]" without "factual enhancement." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007).

    By these standards, Plaintiff's Complaint falls short.

The gist of the Complaint's factual allegations against Defendant Lucero-Ortega, sued in her individual capacity, are that she was the warden of the WNMCF, a large prison facility; that she failed to institute policies concerning the "screening, training, and monitoring" of her subordinates so as to keep prisoners "reasonably safe from sexual assault by corrections officers and staff"; that "because of" allegedly "lax" screening, training and monitoring of the facility's corrections officers, "there have been numerous recent allegations" (<u>allegations</u>, not proven acts) "of sexual assault on inmates by corrections officers there, including other <u>allegations</u> against Defendant Valdez" (emphasis added); and that "Defendant Lucero-Ortega's deliberate indifference toward the welfare and constitutional rights of the inmates of the facility caused Plaintiff damages and injuries[.]" This latter allegation, of course, is nothing more than "a formulaic recitation" of the deliberate indifference element of a Section 1983 claim and is utterly "devoid" of the required "further factual enhancement." <u>Ashcroft v. Iqbal</u>, <u>supra</u>.[1]

Plaintiff's Complaint does not even attempt to make allegations to support one of the essential elements of intent

---

[1] Plaintiff's Complaint does not allege (and it is undisputed) that Warden Roberta Lucero-Ortega herself sexually abused Plaintiff or that the Warden participated in any such alleged acts, nor does the Complaint allege that the Warden had personal knowledge about the purported interactions between Plaintiff and Defendant Valdez. Supervisory liability, in any event, requires "more than a supervisor's mere knowledge of his subordinate's conduct." <u>Schneider v. City of Grand Junction Police Dep't</u>, 717 F.3d 760, 767 (10th Cir. 2013)(quoting <u>Ashcroft v. Iqbal</u>)(quotation marks omitted); cited by Plaintiff at bar in Response [Doc. 11], at 2.

necessary to state an Eighth Amendment claim, to wit: the subjective component. See Farmer v. Brennan, 511 U.S. 825, 837-38, 842, 844 (1994) (Eighth Amendment; requires proof of defendant's subjective "consciousness" of risk of constitutional injury), discussed in Motion [Doc. 3] at 8-9.

A review of the allegations that the Supreme Court found to be insufficient in Ashcroft v. Iqbal is instructive.

In Iqbal, the Supreme Court rejected as "not plausible" (and therefore not justiciable under Bivens or Section 1983) a variety of allegations made by a Pakistani plaintiff against John Ashcroft, Attorney General of the United States, and Robert Mueller, the Director of the Federal Bureau of Investigation, who apparently were sued in their individual capacities. The plaintiff in Iqbal alleged that the two named defendants had designated him as "a person of high interest" on account of his race, religion, or national origin; that the FBI, under Mr. Mueller's direction, had arrested and detained him; that both defendants "knew of, condoned, and willfully and maliciously agreed to" subject the plaintiff to harsh conditions of confinement (kept in lockdown 23 hours a day with only one hour outside the cell in handcuffs and leg irons and accompanied by a four-officer escort) "as a matter of policy" and based "solely" on account of prohibited factors (race, religion, or national origin) and for no legitimate penological interest; and that Attorney General Ashcroft was the "principal architect" of the unconstitutional policy and that Director Mueller was "instrumental" in the policy's adoption, promulgation and

implementation. The complaint alleged that the subordinates of Attorney General Ashcroft and FBI Director Mueller had, in accordance with the subject policy, *inter alia*, kicked him in the stomach, punched him in the face, dragged him across his cell, subjected him to serial body-cavity searches and refused to let him pray. See Ashcroft v. Iqbal, supra, 556 U.S. at 668-70.

On their face, the allegations of the Iqbal complaint alleged individual acts by Messrs. Ashcroft and Mueller. Thus, the district court held that these allegations stated a plausible claim for relief against them individually, and the Second Circuit Court of Appeals affirmed. The Supreme Court, however, reversed.

The Supreme Court found that the factual allegations (summarized above) were, for the most part, "bare assertions" which were "conclusory and not entitled to be assumed true" including the express allegation that Mr. Ashcroft and Mr. Mueller "knew of, condoned, and willfully and maliciously agreed" to subject plaintiff to the unconstitutional conditions of his confinement, based on his religion, race or national origin and in accordance with the invidious policy that the defendants had created and implemented. See Ashcroft v. Iqbal, supra, 556 U.S. at 680-82.

The Court held that the complaint's factual allegations that Attorney General Ashcroft and Director Mueller themselves had "approved" the unconstitutional policy (purposefully designating detainees to be "of high interest" because of their race, religion or national origin) were "not plausible" in light of "more likely explanations" (such as a legitimate law enforcement policy adopted

-4-

in response to the September 11 attacks which produced a "disparate, incidental impact on Arab Muslims, even though the purpose of the policy was to target neither Arabs nor Muslims"). Id. at 681-82. The Court also held that notwithstanding the express allegations of the complaint that the defendants "knew of, condoned, and willfully and maliciously agreed" to detain him "solely on account of" his race, religion or national origin), such bare, conclusory allegations failed to "nudge" a claim of purposeful discrimination "across the line from conceivable to plausible" and that the complaint would need to allege "more by way of factual content" to plausibly plead the requisite discriminatory state of mind. Id., 556 U.S. at 683.

The Supreme Court in Iqbal thus set a very high pleading bar where the plaintiffs sue supervisory defendants who are in charge of large organizations with numerous subordinates; it is not sufficient simply to make a bare, conclusory allegation that the supervisor had knowledge of an unconstitutional situation, or that he or she ordered unconstitutional acts, or that he or she had the requisite state of mind; there must be more alleged in the way of "factual content" to support such allegations.

Here, Plaintiff alleges far less than in Iqbal: she does not allege that Ms. Lucero-Ortega had any knowledge about the assault, let alone that she ordered, participated, acquiesced in or ignored the alleged sexual assault by Defendant Valdez. Her only alleged personal act was to fail to institute unspecified, unexplained "policies" regarding "screening, training, and monitoring" of her

subordinates. It goes without saying that "screening, training, and monitoring" encompass a very broad set of subject matters.

Plaintiff at bar candidly admits that the Tenth Circuit has not addressed "the precise contours" of what factual allegations regarding a supervisor's "personal involvement" in a violation of a plaintiff's constitutional rights by a subordinate will satisfy the "stricter liability standard" created by Iqbal. See Schneider v. City of Grand Junction Police Dep't, supra 717 F.3d at 768, discussed by Plaintiff in his Response [Doc. 11] at 2. Indeed, Circuit Judge Tymkovich's concurring opinion in Dobbs v. Richardson, 614 P.3d 1185, 1208-13 (10th Cir. 2010), discussed by Plaintiff (Response at 3), underscores that the law in this area, and specifically including what allegations are required to plead a supervisor's deliberate indifference in the Eighth Amendment context (the constitutional right involved at bar), is "tricky" and is anything but clearly established. See Dobbs v. Richardson, supra, 614 P.3d at 1211; and see also 1213 ("The exact contours of causation--especially regarding an official's state of mind sufficient for liability--are uncertain in light of Iqbal.")

It is black letter law, of course, that a defendant is entitled to qualified immunity unless plaintiff demonstrates that the constitutional right allegedly violated was clearly established by an on-point decision by the Supreme Court, Tenth Circuit or the New Mexico Supreme Court. Plaintiff must show pre-existing cases with "similar circumstances" that would have made the unconstitutionality of an officials's acts "beyond debate" and

"apparent" to any reasonable state official, and would have given him or her "fair and clear warning" that a proposed course of action was unconstitutional. See, e.g. White v. Pauly, 580 U.S. ___, 137 S.Ct. 548, 551-52 (2017)(per curium) (citations omitted); Powell v. Mikulecky, 891 F.2d 1454, 1456-1457 (10th Cir. 1989) (plaintiff must show that the constitutional right as applied by the case law was sufficiently clear that a reasonable official would understand his or her conduct violated that right); Hannula v. City of Lakewood, 907 F.2d 129, 131 (10th Cir. 1990) ("plaintiff must demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited"); Pueblo Neighborhood Health Centers, Inc. v. Losavio, supra, 847 F.2d at 645 ("plaintiff must do more than identify in the abstract a clearly established right and allege that defendant violated it"); see Hope v. Pelzer, 536 U.S. 730, 739-40 (2002) ("qualified immunity operates to ensure that before they are subjected to suit [for damages under 42 U.S.C. § 1983], officers are on notice their conduct is unlawful").

The cases Plaintiff cites do not show clearly established law, and are not particularly apposite. Dobbs v. Richardson involved a sheriff whose policies at the jail he operated (not the absence of policies, as alleged at bar) prohibited felony arrestees from posting bail that had been previously and lawfully set by a judge; the case was on summary judgment, and the Court of Appeals found that plaintiff had demonstrated facts that, if proven at trial, sufficed to establish the sheriff's "personal involvement" in the

application of the unconstitutional policy to plaintiff, inferring that he personally may have "played more than a passive role" and may have "deliberately enforced or actively maintained the policies in question at the jail." Dobbs v. Richardson, supra, 614 F.3d at 1202-04. Wilson v. Montano, 715 F.3d 847 (10th Cir. 2013) involved a warden and sheriff who "promulgated" and implemented an unconstitutional policy or custom of holding people in custody without court orders, warrants or criminal charges for days or weeks without going before a judge for a probable cause hearing; that case is very different from the one at bar, where the allegation is that Ms. Lucero-Ortega "failed to institute policies concerning screening, training, and monitoring" of subordinates; the policies allegedly not instituted, as previously noted, are exceedingly broad, not otherwise specified, and not causally tied in any factual way to the alleged constitutional violation except by speculation: that "[i]f it were known" by corrections officers and staff that they were being monitored, "they would be less likely to violate WNMCF policies, including those policies designed to prevent sexual assault of prisoners." See Complaint, ¶ 29.

In Porrow v. Barnes, 624 F.3d 1322 (10th Cir. 2010), a case involving an admittedly excessive use of force, the Court affirmed a summary judgment in favor of the supervisory defendants, because "there's no evidence of [their] *direct personal responsibility* for the force used against [plaintiff]." Id., 624 F.3d at 1326-27 (italics by Court of Appeals). So too, here. And in Keith v. Koerner, 707 F.3d 1185 (10th Cir. 2013), the Court found that

plaintiff had "nudged her claims [against a prison supervisor, by a female prisoner who had had sex with a prison instructor and become pregnant] beyond the conceivable to the plausible" when she attached a state audit report and alleged, based partly on the written findings of the report, that the supervisor had knowledge of multiple incidents of unlawful sexual contact at the prison (at least 87 incidents of sexual misconduct or undue familiarity) as well as knowledge of multiple failures to properly investigate such incidents and terminate staff for substantiated allegations, and where the complaint also alleged specific policy decisions by the supervisors not to address known problems discussed in the report. In sum, the factual allegations in Keith v. Koerner went far beyond those made against Ms. Lucero-Ortega in the Complaint at bar.

Plaintiff has failed to state a plausible Section 1983 claim against Defendant Roberta Lucero-Ortega in her individual capacity.

## II. CLAIM UNDER NEW MEXICO TORT CLAIMS ACT (COUNT III)

The gist of Plaintiff's Complaint is that she suffered an assault and battery by a corrections officer, and that the negligence of the New Mexico Corrections Department (and its supervisory employee, Warden Lucero-Ortega) proximately caused these intentional torts (which also are criminal acts) to happen.

The Tort Claims Act waives sovereign immunity under § 41-4-12, NMSA 1978, for enumerated, intentional torts (including assault and battery; see § 41-4-12), and case law makes clear that the negligence of a supervisor or the department (negligent hiring,

training and/or supervision) that causes the commission of such an assault and/or battery by a subordinate officer is also actionable. See, e.g. Silva v. State, 106 N.M. 472, 477, 745 P.2d 380, 385 (1987); Ortiz v. State, 112 N.M. 249, 250, 814 P.2d 117, 118 (Ct.App. 1991); Quezada v. County of Bernalillo, 944 F.2d 710, 719 (10th Cir. 1991); Narney v. Daniels, 115 N.M. 41, 846 P.2d 347 (Ct.App. 1992), cert. denied, 114 N.M. 720, 845 P.2d 814 (1993); Weinstein v. City of Santa Fe, 121 N.M. 646, 651, 916 P.2d 1313, 1318 (1996).

The fatal problem for the Plaintiff, however, is that the New Mexico Department of Corrections and wardens of state prisons and prison corrections officers are not "law enforcement officers" and § 41-4-12 thus does not waive immunity. See, e.g. Callaway v. New Mexico Dep't of Corrections, 117 N.M. 637, 641, 875 P.2d 393, 397 (Ct.App.), cert. denied, 118 N.M. 90, 879 P.2d 91 (1994); Vigil v. Martinez, 113 N.M. 714, 721, 832 P.2d 405, 412 (Ct.App. 1992); Anchondo v. Corrections Dep't, 100 N.M. 108, 666 P.2d 1255 (1983); and Rayos v. New Mexico Dep't of Corrections, 336 P.3d 428 (2014).[2]

Thus, Plaintiff has attempted to twist and squeeze a different, inapplicable waiver of immunity to fit an alleged rape. The effect of Plaintiff's theory, if accepted, however, would be to turn any intentional tort that occurs inside or around a building

---

[2] Interestingly, under well-settled New Mexico law, wardens and detention officers of county jails and county detention centers are "law enforcement officers" within the meaning of § 41-4-12, and therefore can be sued under § 41-4-12. See, e.g. Methola v. County of Eddy, 1980-NMSC-145, 95 N.M. 329, 622 P.2d 234 (1980); Davis v. Bd. of County Comm'rs, 1999-NMCA-110, 127 N.M. 785, 987 P.2d 1172.

(pretty much everything not occurring in a lake or in the woods) into "negligence ... in the operation or maintenance of any building" regardless of whether or not the physical structure or premises was involved in the tort in any way, shape or form. Here, that would be the failure to create administrative policies regarding the screening, training or monitoring of employees.³

Defendants will not reiterate or reargue the New Mexico and federal cases cited in their motion, construing § 41-4-6 <u>in the context of prisons</u> very narrowly. <u>See</u> Motion [Doc. 3], at 10-12, citing and discussing cases from 1985 through 2016. Therefore, cases construing § 41-4-6 in very different settings and contexts, such as public swimming pools, state fairgrounds or public schools, have minimal precedential effect.

The case of <u>Upton v. Clovis Mun. Sch. Dist.</u>, 2006-NMSC-040, 140 N.M. 205, 141 P.3d 1259 is somewhat of an outlier and anomaly, and, on information and belief, has not been applied since its inception in 2006 to a prison or jail, nor has it ever been applied to create a waiver of immunity under § 41-4-6 for negligence based on the failure to promulgate policies related to screening, training or monitoring of employees that, in turn, allegedly caused an alleged rape of a prisoner by a correctional officers; nor, for that matter, to any factual situation even close to that one.

---

³ It is worth noting that the waivers of immunity in the New Mexico Tort Claims Act are supposed to be strictly construed. <u>See</u> <u>Kreutzer v. Aldo Leopold High Sch.</u>, 2018-NMCA-005, at ¶ 51 ("exceptions to the TCA's general rule of immunity are strictly construed"); <u>Rutherford v. Chaves County</u>, 2003-NMSC-010, ¶ 11, 133 N.M. 756, 759, 69 P.3d 1199, 1202 ("Statutory provisions purporting to waive governmental immunity are strictly construed").

Factually, too, Upton was very different: it involved the disregard of already-promulgated safety protocols and an inadequate emergency and medical response (not, as here, the alleged failure to create employment-related policies). Also, the Court emphasized that "the negligence must be of the kind which makes the premises dangerous, or potentially so, to the affected public, the consumers of the service or the users of the building" which the Court found to be the situation. See Upton, supra, 2006-NMSC-040 at ¶ 23. Here, notwithstanding Plaintiff's arguments, the allegations as to the underlying tortious act (a request for sexual favors in return for turning a blind eye to an infraction by an inmate) are very specific to the individuals involved. See Complaint, ¶¶ 5-17.

It is not an exaggeration to conclude that construing the allegations at bar--the alleged failure of the administration of a state prison "to institute policies concerning screening, training and monitoring" of employees--to waive immunity under § 41-4-6 would not only be illogical and unprecedented, but would swallow up and effectively eliminate that particular, limited waiver of immunity.

Respectfully submitted,

**LAW OFFICE OF MICHAEL DICKMAN**

By: <u>/s/ Michael Dickman</u>
    **MICHAEL DICKMAN**
Post Office Box 549
Santa Fe, New Mexico 87504
505-989-9360
mikedickman@yahoo.com
**Attorney for Defendants
Roberta Lucero-Ortega and
New Mexico Dep't of Corrections**

## CERTIFICATE OF SERVICE

I certify that I caused copies of this reply brief
to be electronically served on
all counsel of record
at their respective email addresses as registered on CM/ECF
on the date of filing hereof

/s/ Michael Dickman
MICHAEL DICKMAN